FILED
2004 Dec-09 PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SUSIE CAROL HOLLIDAY,** ) | |
| Plaintiff, ) | |
| ) | |
| ) | 5:03-CV-1419-JHH |
| vs. ) | |
| ) | |
| **SANMINA-SCI CORPORATION,** ) | |
| a corporation, ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF DECISION**

**Introduction**

In November 2002, Susie Carol Holliday (hereafter "Plaintiff") filed a charge with the Equal Opportunity Employment Commission (hereafter "EEOC") alleging that her employer Sanmina-SCI Corporation[1] (hereafter "Defendant") unlawfully discriminated against her because of her age and gender. After Plaintiff filed an amended charge in January of 2002, the EEOC issued a letter of right to sue.

Plaintiff filed this suit on June 3, 2003. Plaintiff alleged in Count One that Defendant treated her differently because of her age in violation of the Age Discrimination in Employment Act (hereafter "ADEA"). In Count Two Plaintiff alleged that Defendant's actions created a hostile work environment in violation of the ADEA. Count Three alleged that Defendant treated Plaintiff differently because of her gender in violation of The Civil Rights Act of 1964, as amended (hereafter "Title VII"). Count Four alleged that Defendant created a hostile work environment in violation of Title VII.

---

[1] In December 2001, SCI, Inc. operating out of Huntsville, AL, merged with Sanmina, a California corporation. The resulting entity was Defendant Sanmina-SCI Corp. (Def. Ex. 1 at 1).

On April 29, 2004, both parties stipulated to the dismissal of Plaintiff's hostile environment claims contained in Counts Two and Four.  Remaining are Plaintiff's claims associated with her reassignment from her supervising position in the fall of 2002.  She claims that her age (Count One) and/or her gender (Count Three) was a determinative consideration that made a difference in the challenged employment decision and that she was treated differently than younger employees and/or employees of the opposite sex.

The Court has before it Defendant's motion for summary judgment on the remaining counts, brief and evidentiary submissions, all filed June 4, 2004, as well as Defendant's supplemental affidavit filed August 12, 2004, and Defendant's reply brief filed August 13, 2004.  Also before the Court is Plaintiff's memorandum opposing summary judgment accompanied by Plaintiff's evidentiary submissions filed August 2, 2004.  Pursuant to the June 8, 2004, order as modified, the motion is now under submission.

As the following analysis illustrates, there exists no genuine issues of material fact with regard to either of Plaintiff's remaining claims.  Defendant has proffered a reasonable legitimate and non-discriminatory reason for the challenged employment decision and presented substantial evidence which supports such reason.  Plaintiff in turn has failed to come forward with evidence sufficient to allow a rational trier of fact to disbelieve the articulated reason.  As such, Defendant is entitled to a judgment as a matter of law, and Defendant's motion for summary judgment is due to be granted.

**Undisputed Factual Background**[2]

Defendant produces computer related products such as circuit boards for both private and government entities. Within the Huntsville Alabama area, Defendant owns and operates several manufacturing facilities. While the majority of Defendant's plants produce material for private entities, Plant One, where Plaintiff was employed, specializes in government contracts. (Def. Ex. 1 at 1-2).

Plaintiff is a 62 year old, white female and has worked for Defendant since 1990. (Def. Ex. 1 at 2). In 1990, Plaintiff was hired by SCI corporation as a "Cost Supervisor" and kept the same job until February 2001 (shortly after SCI's merger with Sanmina Corporation), when she was promoted to "Manager-Level I."[3] (Def. Ex. 1 at 2). As a Manager, Plaintiff had two or three other employees under her direct supervision. (Def. Ex. 1 at 3). It is undisputed that between 1996 and 2003 Plaintiff consistently received high marks on her work evaluations, and on each evaluation Plaintiff was found to have "outstanding" or "commendable" skills in working with others. (Pl. Ex. B). In addition, other than the complaints lodged by Robert Nelson (hereafter Nelson), Plaintiff was never informed that her coworkers were not pleased with how she carried out her supervisory duties. (Pl. Decl. at 6).

In September 2002, Nelson, an employee under Plaintiff's supervision, requested that he be allowed to leave work early to attend a social event connected with his wife's promotion in the National Guard. (Def. Ex. 29 at 146). Although Plaintiff denied his request, Nelson left

---

[2] Where there is a factual dispute, unless otherwise noted, the facts are stated in the light most favorable to the plaintiff.

[3] Within the company this position is also known as "Controller-Level I." (Def. Ex. 1).

early anyway. (Def. Ex. 29 at 146). The following Monday Plaintiff discovered that Nelson left without permission and notified her supervisor Amy Morris (hereafter Morris). (Def. Ex. 29 at 147). Morris agreed that Plaintiff should reprimand Nelson for leaving early and approved Plaintiff's written reprimand of Nelson. (Def. Ex. 29 at 147; Def. Ex. 16 to Ex. 29).

Prior to being reprimanded, Nelson approached Thomas Avery (hereafter Avery), the Human Resources Manager for Plant One, and complained that Plaintiff was acting inappropriately towards him and other employees. (Def. Ex. 10 at 7). Specifically, Nelson alleged that Plaintiff patted him on the butt and referred to him as "stud" and "honey."[4] (Def. Ex. 7 at 3). Avery confronted Plaintiff, who admitted patting Nelson on the butt, but dismissed her action as typical behavior at Plant One[5]. (Def. Ex. 10 at 7).

After Nelson received the written reprimand from Plaintiff, he re-alleged his complaints of harassment to Nancy Bates (hereafter Bates), the Human Resources Manager for Defendant's Southeast Region. (Def. Ex. 1 at 3). Nelson also told Bates that he felt his reprimand was a retaliation by Avery and Plaintiff for his earlier complaints. (Def. Ex. 1 at 3). Concerned by Nelson's report, Bates began investigating Plaintiff's behavior and questioned other employees about Plaintiff's demeanor and work habits. (Def. Ex. 1 at 5). Bates's investigation confirmed Nelson's allegations concerning inappropriate comments, but no employee could confirm that Plaintiff actually touched Nelson. (Def. Ex. 1 at 6). Subsequent inquiries by Bates uncovered

---

[4] Nelson also alleged that, among other things, Plaintiff called him "dumb-ass" on multiple occasions, threatened to "castrate" him if his work was late, alleged that Robert Swift and Morris were having a sexual affair, joked about a friend of hers taking Viagra and smiled at him in an "inviting" way. (Def. Ex. 7 at 3).

[5] Plaintiff denies admitting that she patted Nelson on the butt, and this fact is actually "in dispute." Regardless, it is undisputed that in the investigation which preceded the challenged employment decision Defendant received numerous reports that Plaintiff, on multiple occasions, did behave in an unprofessional manner with regard to multiple employees.

4

testimony by multiple employees that Plaintiff acted in an inappropriate and abusive manner toward her fellow employees. (Def. Ex. 1 at 10).

Bates concluded that Plaintiff's behavior had resulted in an unusually high turnover rate for her section and that multiple employees resigned or transferred to avoid Plaintiff. (Def. Ex. 1 at 11). Amanda Eldridge (hereafter Eldridge) asked to be reassigned because she could not work with Plaintiff. (Def. Ex. 2 at 4). Andrea Latham (hereafter Latham) accepted a position in another plant, and her decision to leave was based at least partially upon her desire to quit working under Plaintiff's supervision. (Def. Ex. 3 at 5). Likewise, Fay Richardson (hereafter Richardson), though she was pleased with her work and needed the compensation, resigned because she felt she could no longer handle working under Plaintiff's supervision.[6] (Def. Ex. 4 at 5).

In accordance with the results of her investigation, Bates concluded that Plaintiff was not fit to supervise other employees and recommended that Defendant reassign Plaintiff and require her to take sensitivity training. (Def. Ex. 1 at 13). After consulting in-house counsel and upper level management, Bates met with Plaintiff's direct supervisors, Robert Swift (hereafter Swift) and Morris who both agreed with Bates's recommended course of action. (Def. Ex. 1 at 14). On October 7, 2002, Bates, Swift and Morris all met with Plaintiff and informed her of the decision to reprimand her. (Def. Ex. 1 at 14). Plaintiff was ordered to attend sensitivity training and reassigned to a new position. (Pl. Ex. D). Plaintiff was no longer to have any employees under

---

[6] Plaintiff disputes Richardson's allegations that she left because of their personal conflicts. (Def. Ex. 4 at 4). However, Richardson's affidavit clearly states that her reason for leaving work was due to Plaintiff's conduct. (Def. Ex. 4 at 4). Richardson denies that she left work because of her high blood pressure as Plaintiff asserts. (Def. Ex. 4 at 4).

her supervision, and her new title was DCAA/Compliance Liaison. (Pl. Ex. D). While Plaintiff's pay and benefits were not negatively affected, she alleges that she could no longer receive stock options and bonuses previously available to her.[7] (Pl. Decl. at 2). As a result of her reassignment Plaintiff filed the instant lawsuit.

## Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-

---

[7] It appears Plaintiff's assertion that she lost stock options or the right to receive bonuses is incorrect. Defendant presents the Supplemental Affidavit of Bates. Bates's Affidavit and accompanying exhibits show that under the Defendant's stock option plan, Plaintiff as an employee at any level was eligible to purchase stock options. (Def. Supp. Aff. at 2; Ex. A to Def. Supp. Aff.). Furthermore, Plaintiff received a bonus in May of 2003, after she had been reassigned. (Ex. D to Def. Supp. Aff.).

movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248;  Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing U.S. v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of

any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## Applicable Substantive Law and Analysis

The ADEA prohibits an employer from discriminating against employees because of their age. 29 U.S.C.A. § 623(a)(1) (1998). Likewise, employers are also prohibited by Title VII from discriminating against employees because of their sex. 42 U.S.C. § 2000e-2(a)(1) (1991). Claims under Title VII and the ADEA are both analyzed using the McDonnell Douglas framework. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 n. 6 (11th Cir. 2001). Because the analysis of sex discrimination claims and age discrimination claims are identical, the Court need not engage in totally separate analysis for each claim. Id.

To succeed on a claim of discrimination, the plaintiff bears the initial burden of presenting a *prima facie* case. Elrod v. Sears Roebuck and Co., 939 F.2d 1466, 1469 (11th Cir.

1991); see also Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff may discharge this burden by 1) "presenting direct evidence of discriminatory intent;" 2) meeting the elements of a *prima facie* case as defined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or 3) offering statistics to prove a pattern of discrimination.[8] Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Plaintiff here does not offer direct evidence, nor does she present the court with statistical evidence of a pattern of discrimination. Thus, the Plaintiff's only option is to establish her *prima facie* case indirectly under the McDonnell Douglas burden shifting analysis.

To demonstrate a *prima facie* case under McDonnell Douglas, the plaintiff must show that she was

> (1) a member of the protected class; (2) qualified for the position; (3) subject to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class.

Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002). Once the plaintiff produces a *prima facie* case, the burden shifts to the defendant to articulate "a legitimate nondiscriminatory reason," for the adverse employment action. Elrod, 939 F.2d at 1470. When the defendant

---

[8] To meet a *prima facie* case using direct evidence, the plaintiff must present "evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." Earley, 907 F.2d at 1081 (quoting Carter v. City of Miami, 870 F.2d 578, 581-582 (11th Cir. 1989)). The Eleventh Circuit has said that "only the most blatant remarks," constitute direct evidence. Id. For example, a document plainly stating that an employee was acted against because he or she was "too old" would constitute direct evidence. Id. However, evidence which only "suggests discrimination" and requires the trier of fact to "infer" illegal conduct, is not direct evidence. Id. at 1082. In the instant case Plaintiff claims that her manager Swift called her an "old fart," said her "career was over," and suggested that she could not advance farther in the company because of her age. (Pl. Ex. A at 2; Pl. Decl. at 3). Though such statements, if true, may bolster Plaintiff's claim, in this context they do not constitute direct evidence. These alleged statements were not made in relation to the adverse employment action which forms the basis of Plaintiff's claims. Furthermore, each of these statements was made by Swift, not Bates, the manager who recommended Plaintiff's reassignment. (Def. Ex. 8 at 7). Even if the statements are true, a trier of fact would be required to infer that Bates and Morris shared Swift's attitude. Thus, Plaintiff has no direct evidence and must satisfy the McDonnell Douglas burden.

comes forward with a nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff, and the plaintiff must produce evidence from which a reasonable jury could conclude that the defendant's proffered reason is a pretext for true discriminatory intent. Id. To create a genuine issue of material fact and avoid summary judgment, the plaintiff must produce "*concrete evidence* in the form of *specific facts*," showing the "proffered reason is mere pretext." Earley, 907 F.2d at 1081 (emphasis added).

In the instant case Plaintiff undoubtedly satisfies the first two elements of her *prima facie* case, and Defendant concedes as much. Because Plaintiff is a sixty-two year old female, she falls squarely within the protection of the ADEA, and Title VII protects both males and females from invidious discrimination. 29 U.S.C. § 631(a) (1989). Furthermore, since Defendant does not offer any evidence to the contrary, nor does it appear that there is any, the Court will assume that Plaintiff was qualified for the position of Manager at Plant One. Defendant contends Plaintiff fails to meet the third prong of her *prima facie* case because her reassignment was not an adverse employment action. There is at least some merit to Defendant's contention.[9] Similarly, with respect to her ADEA claim, Plaintiff's ability to meet the fourth prong of her *prima facie* case,

---

[9] Whether Plaintiff's reassignment constitutes an adverse employment action is a close call indeed. It is well-established that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park Florida, 245 F.3d 1232, 1238 (11th Cir. 2001). The Eleventh Circuit has strictly interpreted adverse action to include only actions which work "a *serious and material* change in the terms, conditions, or privileges of employment," and "the employee's subjective" opinion of the action is irrelevant; "the action must be materially adverse as viewed by a reasonable person." Id. at 1239. Against the backdrop of such a stringent standard, Plaintiff establishes only that her reassignment removed her supervisory responsibilities and changed her job duties. (Pl. Decl. at 2). Plaintiff's pay was not changed, and she retained her classification as a "Manager." (Pl. Decl. at 2; Def. Ex. 1 at 14). Though Plaintiff claims she lost the privileges of stock options and bonuses, Defendant's evidence appears to successfully rebut that contention. (Def. Supp. Aff. at 2; Exs. A, B, C & D to Def. Supp. Aff.). The Court is doubtful that Plaintiff's lowered status in the eyes of fellow employees, coupled with her change in responsibilities, is enough to constitute adverse action. See Davis, 245 F.3d at 1245 (finding that in the "majority of instances . . . a loss of prestige on account of a change in work assignments, without any tangible harm," is not actionable under Title VII). However, because the distinction here is a fine one, the Court declines to grant summary judgment for Defendant based on this point.

showing that she was treated differently because of her age, is highly questionable.[10]  However, the Court will assume Plaintiff has met the last two elements of her *prima facie* case, because as will become evident hereinafter, Plaintiff's gender and age claims fail for other reasons.

Assuming that Plaintiff has made a *prima facie* case for each of her claims, Defendant has the burden of articulating a legitimate nondiscriminatory reason to reassign Plaintiff.  Kehlliher, 313 F.3d at 126.  At the outset the Court recognizes that "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" Elrod, 939 F.2d at 1470 (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)).  It is unimportant that an employer's decision was erroneous or even unfair, so long as the employer "gave an honest explanation of its behavior," and that explanation was not a pretext for a discriminatory motive.  See id.  (quoting Mechnig, 864 F.2d at 1359); see also Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452 (11th Cir. 1987) (noting that inconsistent treatment of employees is not illegal as long as the motive is not discrimination of a protected class).

Through her investigation, Bates received numerous reports of instances where Plaintiff had acted in an inappropriate and abusive manner toward her fellow employees, including those supervised by Plaintiff.  For example, Eldridge worked under Plaintiff's supervision and attests that Plaintiff constantly treated her disrespectfully.  During Eldridge's pregnancy, Plaintiff

---

[10]  As will be noted in footnote 17, *infra*, there is no evidence establishing the ages of Plaintiff's comparators.  Further, Louis Lane who replaced Plaintiff after her reassignment is seventy years old, a full seven years Plaintiff's senior.  (Def. Ex. 1 at 15).  Both Morris and Swift, who took part in the decision to reprimand Plaintiff, were over forty years of age and themselves protected by the ADEA when Plaintiff was reassigned.  (Def. Ex. 32 at 16-17; Def. Ex. 33 at 76).  Indeed the only significant figure involved in Plaintiff's reassignment who was under forty years old (at the time of reassignment) was Bates.  (Def. Ex. 30 at 7).  These facts do not enhance Plaintiff's claim that her reassignment was an aged based decision.  See Elrod, 939 F.2d at 1471 (recognizing that an ADEA plaintiff's burden is difficult where the plaintiff's superiors are "within the class of persons protected by the ADEA").

threatened to turn her upside down and poor medicine down her butt. (Def. Ex. 2 at 2). Likewise, Plaintiff stated in the presence of other employees that her supervisor would "screw his own mother for a nickel." (Def. Ex. 4 at 2). Plaintiff also constantly downgraded Morris, her immediate supervisor, and referred to her as "ugly." (Def. Ex. 4 at 3). Plaintiff referred to others in her office as "phone queers," and asked subordinate male employees if they were "putting out today." (Def. Ex. 6 at 2). On more than one occasion Plaintiff called Nelson a "dumb-ass" to his face. (Def. Ex. 7 at 2).[11]

As a result of Plaintiff's inappropriate behavior, many of those who worked under Plaintiff resigned or asked to be reassigned. (Def. Ex. 1 at 6). This created an unusually high turnover rate in Plaintiff's section. (Def. Ex. 1 at 7). During her investigation Bates uncovered all of the referenced evidence through interviews and based her decision to reassign Plaintiff on this information. (Def. Ex. 1 at 13-14).

Based on the foregoing Defendant has easily met its burden of producing a sufficient non-discriminatory reason for its reassignment of Plaintiff. Plaintiff's reported conduct was unprofessional, and is fairly characterized as "abusive." Even if the Court were to assume all of the employees who corroborate Plaintiff's poor behavior were lying, there is nothing to suggest that Bates did not believe them and was not justified in recommending the action taken against Plaintiff. The Court is in no position to second-guess her decision.[12]  See Elrod, 939 F.2d at

---

[11] Defendant's evidence is extensive, and the exhibits are replete with testimony from numerous employees corroborating that Plaintiff was abusive and engaged in clearly inappropriate behavior on a regular basis. The Court need not repeat every instance here.

[12] Although Plaintiff attempts to cast doubt upon the allegations lodged against her, she falls short in many respects. Plaintiff herself does not deny using coarse language but merely infers that was typical behavior for all employees in the office. (Pl. Decl. at 6). While Plaintiff's co-worker Joe Gardella does not remember hearing Plaintiff make many of the comments she allegedly made, he does not have personal knowledge of what Plaintiff

1470.

A plaintiff must do more than quarrel with the employer's proffered reason, rather the "plaintiff . . . must meet it head on and rebut it." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004).[13] At the summary judgment stage of the case, the plaintiff does not have a burden of proof but a burden of production. A plaintiff need only provide evidence which would entitle the plaintiff to a favorable ruling on a motion by the defendant for a judgment as a matter of law. At trial, to successfully rebut an employer's legitimate reason, a plaintiff may "***directly***" persuade "the court that a discriminatory reason more likely motivated the employer," *or* "***indirectly***" show that "the employer's proffered explanation is unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)(quoting Burdine, 450 U.S. at 256)(emphasis added). If the plaintiff chooses the direct route, the "burden of proving [that the employer's proffered explanation is pretextual] merges with the plaintiff's ultimate burden of proving that age [or gender] was a determining factor." Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1314 (11th Cir. 1998)(quoting Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993)). On the other hand, under the indirect approach, the "plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find [all of those reasons] unworthy of credence.'" Id. (quoting Combs, 106 F.3d at 1538). If the evidence the plaintiff offers in opposition to a motion for summary judgment is insufficient "to create a

---

may have said to other employees. (Joe Gard. Decl. at 3). Plaintiff also casts doubt upon the credibility of Nelson and points out that he was not a model employee himself. (Def. Ex. 30 at 62-63). Regardless, Plaintiff's evidence does not rebut the multiple affidavits of employees all offering similar stories relating Plaintiff's misconduct.

[13] As part of his showing of pretext, the plaintiff may offer the same evidence he offered to make his *prima facie* case. Wilson, 376 F.3d at 1088.

genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman v. AI Transp., 229 F.2d 1012, 1024 (11th Cir. 2000).

With respect to the ADEA claim, plaintiff points to the alleged age based animosity had for her by Morris and to Swift's statements concerning Plaintiff's age as sufficient to rebut Defendant's articulated reason for the reassignment. But the record is devoid of any evidence that Morris had any animosity towards Plaintiff ***because of her age***.[14]  See (Def. Ex. 8). As the Court recognized earlier, Swift's statements concerning Plaintiff's age do not constitute "direct" evidence of discrimination. Plaintiff points out that during a meeting concerning a promotion, Swift said "Carol, you don't think this young group is going to invest any time or money in you at your age do you?" (Pl. Decl. at 3).[15] The import of this statement is undermined by the fact that four months later Plaintiff actually received a raise and a promotion to Manager-Level I. Plaintiff next points to Swift's statements that she was an "old fart" and that her career was "over with." (Pl. Ex. A at 2). Swift allegedly finished his statement by saying "[a]ll I am trying to do is help a young person with a career and a future."[16] (Pl. Ex. A at 2).

---

[14] This Court is unconcerned with whether Plaintiff and Morris were the best of friends or arch enemies, so long as it appears Morris was not preoccupied with Plaintiff's age.

[15] Swift's words, taken exactly as Plaintiff repeats them, amount to nothing more than an observation. Swift did not say he wished to fire Plaintiff, nor did he recommend that anyone else take any adverse action towards Plaintiff. Swift merely pointed out what he thought about the current management. To that end there is no evidence that Swift's observation was correct or that he himself would discriminate against Plaintiff because of her age.

[16] As the Eleventh Circuit has repeatedly observed, "not every comment concerning a person's age presents direct evidence of discrimination." Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989); Young v. Gen. Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988). Although Swift's comments are not entirely "facially neutral," neither are they "directly probative of discriminatory intent." See Young, 840 F.2d at 829. Swift did not say Plaintiff would be fired, disciplined or not promoted because he thought she was too old.

Swift's comments are not sufficient to overcome Defendant's legitimate reasons for reassignment. Swift himself did not initiate or carry out the investigation of Plaintiff. Furthermore, the idea to discipline Plaintiff did not originate with Morris or Swift. (Def. Ex. 8 at 7; Def. Ex. 9 at 5-6; Def. Ex. 31 at 31). Swift was not even aware of the high turnover rate in Plaintiff's department until Bates pointed it out to him. (Def. Ex. 9 at 6). Plaintiff offers no evidence connecting Swift's alleged statements with her challenged reassignment. Plaintiff also offers no evidence indicating that Bates who recommended Plaintiff's reassignment knew about Swift's statements or shared his alleged discriminatory viewpoint. In sum, Swift's statements taken in the light of the foregoing facts, are not directly probative of whether Plaintiff's reassignment was motivated by discrimination.

Plaintiff also attempts to cast doubt on the credibility of Defendant's proffered reason by alleging that younger, similarly situated male employees were treated more favorably than Plaintiff. The cornerstone of this argument is "whether the employees are involved in or accused of the *same* or *similar* conduct and are disciplined in different ways." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (emphasis added). The key elements to examine "are the nature of the offenses committed and the nature of the punishments imposed." Id. The Eleventh Circuit has also held that

> the *quantity* and *quality* of the comparator's misconduct must be nearly identical to prevent court's from second-guessing employers' reasonable decisions and confusing apples with oranges.

Id. (emphasis added); but see Anderson v. WBMG-42, 253 F.3d 561, 565 (11th Cir. 2001) (finding that "the law does not require that a 'similarly situated' individual be one who has

'engaged in the same or nearly identical conduct' as the disciplined plaintiff").

Plaintiff names Jim Oaks, John Noll, Lonnie Tines and George Linder as similarly situated employees who were treated more favorably than Plaintiff because of her age and/or gender.[17]  Other than her own bare allegation, Plaintiff offers no concrete evidence that these men engaged in conduct similar in quantity or quality.  The Defendant's affidavits establish the opposite.  Lonnie Tines only received two complaints in his entire career with Defendant.  One of these complaints was for losing his temper, and the other revolved around his failure to promptly demote a fellow employee.  (Def. Ex. 1 at 20; Def. Ex. 15 at 2).  Jim Oaks was never charged with sexual harassment or anything similar.  (Def. Ex. 1 at 20; Def. Ex. 13 at 2).  George Linder did have three complaints lodged against him for inappropriate comments.  (Def. Ex. 16 at 2). Linder referred to a fellow employee as "babe" and "toots;" he once commented that he could use a type of computer tool to see up an co-workers dress; and he manipulated a catalogue advertisement to say "lick me."[18]  When the minor and infrequent complaints lodged against Plaintiff's putative comparators are collated with the continuous crass and brusque manner and behavior Plaintiff exhibited, it is clear that these employees, no matter their age, were not "similarly situated" to Plaintiff.[19]  See Mannicia, 171 F.3d at 1369 (finding that police officers

---

[17] This information is found in Plaintiffs Answers to Defendant's First Interrogatories.  Plaintiff makes no reference to the age of any of these gentlemen.  The Court has not located in the evidence presented the ages of these comparators but will assume they were below the age of 40 at the time they engaged in the allegedly similar conduct. The Court is satisfied that this is an incorrect assumption with regard to at least one of the alleged comparators.

[18] The advertisement pictured a sucker, and all those involved in the incident acknowledge that Linder was not meaning to be offensive.  (Def. Ex. 16 at 2).

[19] Defendant also offers a virtual laundry list of male employees, some under forty years of age, some over, who were either terminated or demoted due to complaints of sexual harassment between 1998 and 2000.  (Def. Ex. 1 at 16-17).

who engaged in misconduct only once were not "similarly situated" to officer who engaged in misconduct four times and tried to cover up her mistakes by lying).

The only person Plaintiff names who committed acts similar to Plaintiff, yet was not disciplined is John Noll.[20] Defendant concedes that Noll's behavior was similar to that exhibited by Plaintiff and that Noll was allowed to escape discipline for his behavior for some time. (Def. Ex. 1 at 22). Defendant explains that Noll was not disciplined for several reasons. First, Noll worked directly for the founder of SCI, Olin King, who was unwilling to discipline Noll. (Def. Ex. 12 at 4). Second, Noll's expertise was indispensable in completing the merger between Sanmina and SCI. (Def. Ex. 1 at 23). Third, when SCI merged with Sanmina, Sanmina's management in San Jose took over. The management style of Sanmina, as would be expected, was somewhat different than that of the locally owned SCI. (Def. Ex. 1 at 24). After Olin King's retirement, in June 2002, James Moylan, the new CFO, agreed with Francis Henry, the Vice President of Human Resources, that Noll's behavior had to be curtailed. (Def. Ex. 12 at 4). In October 2001, after receiving another complaint about Noll, Francis Henry removed all of Noll's direct supervisory responsibilities over subordinate employees, directed him to attend sensitivity training and ordered him to conduct himself in a more business like manner. (Def. Ex. 12 at 26). Notably, the discipline imposed on Noll was almost identical to that imposed upon Plaintiff a year later.[21]

The Eleventh Circuit has recognized that "disciplinary measures undertaken by different

---

[20] Plaintiff does not state Noll's age and apparently relies upon his record as evidence of gender discrimination, not age discrimination. Even so, Noll makes a poor comparator as the Court's reasoning illustrates.

[21] Noll did retain his supervisory responsibilities over the chief accounting office for the corporation, but not over the individual people. (Def. Ex. 12 at 6). At that time with the merger underway it was not plausible to totally strip Noll of all supervisory responsibility. (Def. Ex. 12 at 5-6).

supervisors may not be comparable for the purposes of Title VII analysis." Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989). Likewise, employees working under different management policies may not be similarly situated. See Lathem v. Dept. of Children and Youth Serv's, 172 F.3d 786, 793 (11th Cir. 1999). Perhaps the Tenth Circuit best articulated the principle when it said

> Sometimes apparently irrational differences in treatment between different employees that cannot be explained on the basis of clearly articulated company policies may be explained by the fact that the discipline was administered by different supervisors, or that events occurred at different times when the company's attitudes toward certain infractions were different, or that the individualized circumstances surrounding the infractions offered some mitigation for the infractions less severely punished, or even that the less severely sanctioned employee may be more valuable to the company for nondiscriminatory reasons than is the other employee.

David v. City and County of Denver, 101 F.3d 1344, 1360 (10th Cir. 1996). In the case of Noll, there is no evidence that Noll was treated better because he was younger (if in fact he was) than Plaintiff or because he was a male. Rather, the record indicates that Noll was treated better because he was very valuable to the company and occupied favored status with SCI's founder and CEO. (Def. Ex. 1 at 22-23). Furthermore, when management changed hands after the merger, Noll's conduct was no longer tolerated, and he was ultimately demoted and reassigned. (Def. Ex. 1 at 24).

Accordingly, Plaintiff's attempt to paint John Noll as a similarly situated younger male employee who was treated more favorably, fails. It is of no consequence that Noll's conduct was at some point ignored because he was valuable to the company or held favor with powerful management. It is well established that an employer may act against "an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communications, 738

F.2d 1181, 1187 (11th Cir. 1984).

Because the Plaintiff has failed to bring forward evidence sufficient to create a genuine issue of material fact regarding Defendant's articulated legitimate reasons for her reassignment, no reasonable jury could find in favor of Plaintiff. Thus, Defendant is entitled to a judgment as a matter of law, and Defendant's motion for summary judgment is due to be granted.

## CONCLUSION

In conclusion, the Court finds that there are no genuine issues of material fact as to Plaintiff's claims under Title VII or the ADEA. Defendant is entitled to judgment as a matter of law on Counts One and Three. A separate final judgment consistent with the foregoing will be issued.

**DONE** this the 9th day of December, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE